UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MARQUIS HENDRICKS,            )
                             )
        Petitioner,          )
                             )
v.                           )            No. 3:18-CV-00094-JRG-HBG
                             )
CHERRY LINDAMOOD,            )
                             )
        Respondent.          )

## MEMORANDUM OPINION

Petitioner Marquis Hendricks is a Tennessee inmate proceeding pro se on a federal habeas

petition pursuant to 28 U.S.C. § 2254, in which he challenges the legality of his confinement under

Knox County judgments of conviction for first-degree murder, attempted first-degree murder,

possession of cocaine with intent to deliver, possession of cocaine with intent to sell, and simple

possession of marijuana.  Having considered the submissions of the parties, the State-court record,

and the law applicable to Petitioner's claims, the Court finds that the petition should be denied.

## I.     SUMMARY OF RELEVANT EVIDENCE & PROCEDURAL HISTORY

The Tennessee Court of Criminal Appeals ("TCCA") summarized the facts of this case as

follows:

> Nathaniel Bolding and Keith Hammock, brothers-in-law, lived in Lake City at the
> time of the incidents. Mr. Bolding, his wife, and two children shared a home in
> Lake City with his mother-in-law, Mr. Hammock, and Mr. Hammock's daughter.
> Mr. Hammock and Mr. Bolding were also good friends with a penchant for
> partying, drinking, and drug use. Mr. Bolding first established a relationship with
> Appellant when he lived at the Lonsdale housing project in Knoxville before
> moving to Lake City. In order to purchase crack cocaine from Appellant, Mr.
> Bolding renewed his relationship with Appellant several weeks prior to the
> incidents that took place in November of 2012.
>
> At some point between the evening of November 12 and the morning of November
> 13, 2012, Mr. Hammock and Mr. Bolding went from Lake City to Knoxville several
> times to purchase drugs from Appellant. During one of the transactions, both Mr.

Hammock and Mr. Bolding were shot as they were driving away from the purchase place. Mr. Hammock died as a result of his wounds. Mr. Bolding was shot in the right arm.

As a result of a police investigation, Appellant was indicted by the Knox County Grand Jury in February of 2013 for first degree murder, attempted first degree murder, delivery of less than .5 grams of cocaine while employing a deadly weapon, possession of more than .5 grams of cocaine with intent to sell, and possession of more than one-half ounce but not more than ten pounds of marijuana with intent to sell. The case proceeded to trial.

At trial, Nathaniel Bolding testified. At the time of trial, he was twenty-nine years old and lived and worked at a rehabilitation center in Jacksonville, Florida. Mr. Bolding recalled his relationship with his deceased brother-in-law, Mr. Hammock. He explained that the two men were good friends but that they were not good influences on each other because they partied, drank, and used drugs together. About two weeks prior to Mr. Hammock's death, Mr. Bolding took Mr. Hammock to Appellant's apartment to buy crack cocaine.

Mr. Bolding recalled that the day prior to Mr. Hammock's death, Mr. Hammock traded Appellant a television worth $2,000 for $100 worth of crack cocaine. According to Mr. Bolding, Appellant only gave them fifty dollars worth of crack cocaine. Mr. Bolding and Mr. Hammock smoked the crack cocaine.

On the day of Mr. Hammock's death, Mr. Hammock pawned a pressure washer for cash. The men bought a bottle of tequila with the money. Subsequently, the men went to Appellant's apartment where Mr. Hammock gave Appellant $100 so that he could get his television back from Appellant. Appellant informed Mr. Hammock that the television was at Chris Page's house. When Mr. Bolding and Mr. Hammock went to Mr. Page's house, they did not find the television.

At some point that same day, Mr. Hammock and Mr. Bolding bought $80 of crack cocaine from Appellant. The men returned to Lake City where they sat around a fire and smoked crack cocaine and marijuana. The marijuana was purchased from Chris Page earlier that same day. The men eventually ran out of crack cocaine so they decided to drive to Knoxville to purchase more crack cocaine. Mr. Hammock called Appellant. The men went back to Knoxville around 10:30 p.m. They bought another $80 worth of crack cocaine and smoked it on the way back to Lake City.

Desperate for more drugs, the men decided to return to Knoxville once more to purchase crack cocaine from Appellant. According to Mr. Bolding, the men had approximately thirty dollars between the two of them. They arrived on Texas Avenue at around 1:30 a.m. Appellant sold them more crack cocaine. The men returned to Lake City where they smoked the crack cocaine and drank the rest of the tequila. While they were drinking and using drugs, Mr. Hammock became

agitated as he thought about the television that he lost to Appellant. The more upset Mr. Hammock became, the more he wanted to return to Knoxville.

At some point during the night or early morning, Mr. Bolding stated that the two men left Lake City again to go to the methodone [sic] clinic in Knoxville. When they left town, Mr. Bolding drove the car because Mr. Hammock was too intoxicated to drive. The men decided that they would purchase more crack cocaine from Appellant and if Appellant did not return the television to Mr. Hammock they would drive off without paying for the drugs.

As the men approached Appellant's apartment in their car, Appellant came out to meet the car. Appellant leaned over and handed the drugs to Mr. Hammock, in the passenger seat. When Mr. Hammock asked Appellant for his television, Appellant told him that he did not have the television. Mr. Hammock instructed Mr. Bolding to drive away. As they drove away, Appellant said, "don't do it bitch" before pulling a pistol from his waistband and firing it at the car.

According to Mr. Bolding, the car had traveled about ten to fifteen feet when he heard three shots. Mr. Hammock immediately slumped over in the seat and knocked the car into neutral. Mr. Bolding tried to put the car into drive when he realized that he had been shot in the right arm. He had to use his left arm to shift the car into drive. Mr. Bolding tried to drive the car to the interstate to get Mr. Hammock to the hospital. As he approached Merchants Road, Mr. Bolding got dizzy and pulled off the road. At this point, Mr. Hammock was unresponsive. Mr. Bolding left the car, ran to a gas station, and had someone call 911.

Mr. Hammock was deceased by the time officers arrived on the scene. He suffered two wounds to the face that were not fatal and a gunshot wound to his back that hit a rib, entered his lung, and then hit the superior vena cava and aorta. Mr. Hammock died approximately one minute after being shot.

Officer Brian Moran responded to the scene at I–75 and Merchant's Road. Mr. Bolding identified Appellant from a lineup. Appellant was taken into custody. When questioned, Appellant denied knowing anything about a television and denied being responsible for the shooting but admitted selling cocaine. Appellant claimed that he was at a club called "Malibu" before going to his mother's house to sleep.

Officer Moran recalled that initially, Mr. Bolding stated that he got money rather than crack cocaine in exchange for the television and became upset when Appellant tried to sell them more crack cocaine when they came back to Knoxville to pay off the loan. Mr. Bolding's testimony at trial was that they were just trying to retrieve the television. Further, Bolding initially claimed that they came to Knoxville that night four times to buy crack cocaine but did not inform officers of their plan to rob Appellant.

The State attempted to introduce at trial the testimony of Sergeant Brian Dalton, the lead of the forensic unit of the Knoxville Police Department. Counsel for Appellant objected to Sergeant Dalton's testimony about shooting reconstruction because he did not examine the car until one week prior to the trial, nearly one year after the incident. The trial court held a jury-out hearing to hear the proposed testimony and determined that the objection was related to the weight of the expert's opinion rather than the admissibility of the evidence. The trial court overruled the objection.

Sergeant Dalton was certified by the trial court as an expert in shooting incident reconstruction. In preparation for reconstructing the incident, Sergeant Dalton reviewed photographs of the car taken on the night of the incident and the day after the incident by Tiffany Hamlin, a forensic evidence technician for the Knoxville Police Department. The photographs helped Sergeant Dalton to see any changes in the car in the year between the incident and his own observations.

Sergeant Dalton identified two defects in the right rear passenger door glass and one defect in the door itself. He explained that impacts that penetrate glass show a coning effect, meaning that as a bullet or projectile hits the glass, it starts to push material out in front of it, causing a wider opening on the exit side than on the entrance side. There were two defects in the passenger seat near the right-hand side of the headrest as well as an entrance and exit defect on the portion of the car that separated the passenger front door from the passenger rear door where the seatbelt attached to the car. There was also a defect in the back window, but because the window was completely out of the car, Sergeant Dalton was unable to determine whether it was an entrance or exit defect.[]

Upon further observation, Sergeant Dalton was able to determine the approximate flight path of the three primary defects by using "flight path rod[s]" or short sections of steel rods that connect each defect and allow a person to get the "best estimate" of the original angle of the path of the bullet. Sergeant Dalton found four penetrating gunshots to the car including two different bullets that terminated their flight paths in the passenger seat. One bullet terminated at the bottom of the seat and the other traveled through the back of the seat to where the passenger would have been sitting. Of the four flight paths, Sergeant Dalton opined that three of the shots came from outside the car at a downward angle. He was unable to determine if the fourth shot, traveling through the back window, was fired from inside or outside the car.

Appellant testified at trial. He claimed that he met Mr. Bolding during the summer of 2010 and met Mr. Hammock about three months prior to the shooting. Appellant admitted that he sold crack to both men but denied giving drugs to either man without payment.

Appellant claimed that Mr. Bolding tried to sell him a .25 caliber pistol on the same day that Mr. Hammock brought the television. Appellant denied all involvement in

the television deal, claiming that his cousin Chris Page was the one who brokered that deal.

On the day prior to the shooting, Appellant claimed that Mr. Hammock came by his apartment by himself asking for $100 worth of crack cocaine. Mr. Hammock came back later in the afternoon with Mr. Bolding. The men met in the parking lot where Appellant sold them $60 worth of crack cocaine. Mr. Hammock and Mr. Bolding called back a few hours later looking for $120 worth of crack cocaine. When they made the exchange, Appellant only received $80. Mr. Hammock and Mr. Bolding tried to convince Appellant to "front" the drugs, and they would bring him the money later. Appellant refused, and took back some of the crack cocaine. About thirty minutes later, Mr. Hammock and Mr. Bolding called again, this time wanting forty dollars worth of crack cocaine. The men came by with forty dollars, and Appellant sold them crack cocaine.

Around 2:00 a.m., the men called Appellant again, this time looking for $150 in crack cocaine. Appellant was at a club across town; Mr. Bolding assured Appellant that he had the money. Appellant was asked to meet the men on Texas Avenue. They normally met in a parking lot behind Appellant's aunt's apartment. For the first time that day, Mr. Bolding was driving the car. Mr. Bolding explained that Mr. Hammock was too drunk to drive. Mr. Hammock tried to talk Appellant into giving them extra crack cocaine. Appellant told them he was already giving them a good deal and leaned into the car to show Mr. Bolding how much crack cocaine he was offering to the men. At that point, Appellant claimed that Mr. Hammock stuck something in his chest. He could not tell if it was a gun but thought it might be because Mr. Bolding offered to sell him a gun at some earlier time. Mr. Hammock told Appellant to give him everything. Appellant told Mr. Hammock that everything he had was on the console of the car. As Mr. Hammock turned to look on the console, Appellant reached for his own gun and fired as he backed away from the car. Appellant stated that he tripped over the curb as the car backed away.

When the car stopped, Appellant fired again, striking the back window. Appellant testified that he was afraid Mr. Bolding and Mr. Hammock had stopped the car to shoot him. Appellant admitted that he fired multiple shots into the car as it was driving away. Appellant could not tell if he had hit anyone in the car but did not intend to kill anyone that night. He fired at Mr. Hammock intending to shoot him because he was afraid he was about to be shot.

Sometime later, Appellant learned that he hit someone with a bullet. Appellant admitted that he lied to police about where he was on the night of the shooting, about having a gun, and about his phone number. Appellant also admitted that he used a false name and address in order to purchase his telephone and that he got rid of the murder weapon by giving it to a friend named "Joe."

*State v. Hendricks*, No. E2013-00346-CCA-R3CD, 2014 WL 1330184, at *1-5 (Tenn. Crim. App. Apr. 3, 2014) ("*Hendricks I*").

After a jury trial, Petitioner was convicted of first-degree murder, attempted first-degree murder, possession of cocaine with intent to deliver, possession of cocaine with intent to sell, and simple possession of marijuana [Doc. 11-1 at 83, 107, 108, 109, 110]. He received an effective sentence of life in prison [*Id.*]. Petitioner's convictions and sentence were affirmed on appeal. *Hendricks I*, 2014 WL 1330184, at *1 (Tenn. Crim. App. Apr. 3, 2014), *perm. app. denied* (Tenn. Sept. 18, 2014). The Tennessee Supreme Court denied Petitioner's application for discretionary review on September 18, 2014 [Doc. 11-24].

On June 5, 2015, Petitioner filed a petition for post-conviction relief, and that petition was later amended after Petitioner was appointed counsel to assist him [Doc. 11-25 at 5-13, 34-37]. Following an evidentiary hearing, the post-conviction court denied relief [*Id.* at 39-42]. The TCCA affirmed the judgment of the post-conviction court on July 26, 2017. *Hendricks v. State*, No. E2016-02123-CCA-R3-PC, 2017 WL 3174074 (Tenn. Crim. App. Jul. 26, 2017) ("*Hendricks II*"), *perm. app. denied* (Tenn. Nov. 16, 2017). The Tennessee Supreme Court denied discretionary review on November 16, 2017 [Doc. 11-38].

On March 12, 2018, Petitioner filed his original federal habeas petition [Doc. 2]. On August 16, 2018, this Court ordered Respondent to file a response to the petition [Doc. 7]. Respondent complied by filing an answer on October 3, 2018 [Doc. 13]. Petitioner then filed a motion to hold these proceedings in abeyance while he sought State habeas relief [Doc. 15]. That motion was granted [Doc. 16].

Petitioner filed his State habeas petition on September 5, 2018 [Doc. 24-1]. The petition was denied on October 31, 2018 [Doc. 24-4]. While Petitioner did appeal the State habeas court's

denial of his petition, he sought to voluntarily dismiss his appeal on August 3, 2018, which the TCCA granted [Doc. 24-5; Doc. 24-6; Doc. 24-7].

Subsequently, Petitioner filed a motion to amend his federal habeas petition on April 10, 2019, and he filed an amended petition on May 6, 2019, which included two new claims of ineffective assistance of counsel [*See* Doc. 21 at 16-17]. Petitioner's federal habeas petition, as amended, raises the following grounds for relief, as paraphrased by the Court:

1. Whether the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963);

2. Whether the trial court erred in failing to issue jury instructions on the statutory defenses of duress and necessity;

3. Whether the trial court enhanced Petitioner's sentence in violation of *Blakely v. Washington*, 542 U.S. 296 (2004);

4. Whether the trial court erred when it denied Petitioner's request for new counsel; and

5. Whether Petitioner received the ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984) due to counsel's failure to:
   a. Investigate, prepare, and speak to witnesses;
   b. Prepare for trial by investigating legitimate defenses;
   c. File a motion seeking the victim's arrest history and the arrest history of the State's witnesses, along with a motion for expert funds;
   d. Call Chris Page as a witness;
   e. Call character witnesses;
   f. Request proper jury instructions;
   g. Visit the crime scene;
   h. Adequately consult with Petitioner; and
   i. Adequately strategize with Petitioner.

On August 20, 2019, this Court lifted the stay of these proceedings and ordered Respondent to respond to the amended petition [Doc. 22]. In the same order, the Court directed Petitioner to file any desired reply to Respondent's response within fourteen days of the date the response was filed [*Id.*]. Respondent complied with the Court's order by filing an answer on September 23, 2019 [Doc. 25]. Petitioner did not submit a reply.

## II. LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a State court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id.* at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11. This standard will allow relief on a federal claim decided on its merits in State court only where the petitioner demonstrates that the State ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

When evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the State-court's factual findings unless the petitioner rebuts the presumption by

clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Additionally, a federal habeas court must defer to the State-court findings on credibility because it "is not as well positioned as the trial court is to make credibility determinations." *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003). While reasonable minds may differ regarding credibility, such disagreement will not supersede the trial court's credibility determinations on federal habeas review. *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). Rather, a habeas court cannot disturb a trial court's credibility determination unless evidence is presented that is "too powerful to conclude anything" other than an erroneous determination by the trial court. *Miller-El v. Dretke*, 545 U.S. 231, 265 (2005).

The doctrine of procedural default also limits federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of his available State remedies, and the State court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a State court clearly and expressly bases its dismissal of a claim on a State procedural rule, and that rule provides an independent and adequate basis for the dismissal. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731-32, 735 n.1 (1991). A procedural default may be circumvented, allowing federal habeas review of the claim, only where the prisoner can show cause and actual prejudice for the default, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Id.* at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977).

"Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the State's procedural rules, or that his trial counsel rendered ineffective assistance. *See id.* at 753. The prejudice demonstrated to overcome the default must be actual, not merely a possibility of prejudice. *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 170 (1982)

(holding prejudice showing requires petitioner to bear "the burden of showing, not merely that errors [in the proceeding] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimension") (emphasis in original). A fundamental miscarriage of justice of occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

III.    **DISCUSSION**

    A.    ***Brady* Claim**

In his first ground for relief, Petitioner contends that the State violated *Brady v. Maryland*, 373 U.S. 83 (1964), when it failed to disclose forensic evidence, as well as the arrest histories of the victim and prosecution witnesses [Doc. 21 at 4-5]. In his original habeas petition, Petitioner argued that "forensic evidence withheld by the DA was vital to call or consult a forensic and/or forensic pathologist expert witness" to show that the witness was accidentally shot when Petitioner tripped [Doc. 2 at 5]. Petitioner does not identify the allegedly withheld forensic evidence.

On direct appeal, Petitioner argued that the State improperly withheld exculpatory evidence under *Brady* when it failed to inform him that Nathanial Bolding lied when he denied that he came to Knoxville to rob Petitioner, and by changing his story regarding the source of the funds used by Keith Hammock to purchase drugs [Doc. 11-19 at 34-36].

The Court finds that Petitioner's federal habeas allegations differ from those presented to the State courts. The proper exhaustion of state remedies requires that petitioners "fairly present" their federal claims in state court. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (holding that a necessary component of the exhaustion doctrine is that the federal claim must be "fairly present[ed]" to "each appropriate state court" prior to seeking relief in the federal courts); *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (holding habeas petitioner must first present claims in state

court before they may be considered on federal habeas review). Petitioner does not now have an opportunity to present these precise allegations in State court. *See, e.g.*, Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule). Therefore, to the extent Petitioner's federal habeas allegations have additional or expanded factual or legal bases beyond those asserted in State court, such claims are procedurally defaulted. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted.").

Here, Petitioner has not demonstrated the applicability of any exception to the procedural default doctrine that would allow review of his claim. Moreover, he has failed to include any challenged evidence as part of his petition, and therefore, he has failed to sustain his burden of proving that evidence was not properly disclosed to him. *See, e.g., Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (noting petitioner has burden of proving *Brady* violation); *Burns v. Lafler*, 328 F.2d 711, 724 (E.D. Mich. 2004) ("Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim.") (citing *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000)).

However, to the extent the current *Brady* claim challenges the State courts' adjudication of his direct appeal *Brady* claim, the Court considers the claim on its merits. To establish a *Brady* claim, a petitioner must show that the State withheld evidence favorable to the accused and material to either the petitioner's guilt or punishment. *Brady*, 373 U.S. at 87. The Supreme Court has articulated "three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the

proceeding would have been different." *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006) (internal quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) (internal quotation marks and citation omitted).

Petitioner argued in State court that the State withheld exculpatory evidence by failing to inform him that Nathaniel Bolding lied when he denied that he came to Knoxville to rob Petitioner, and by changing his story regarding the source of the funds used by Keith Hammock to purchase drugs [Doc. 11-19 at 34-36]. Considering this claim on direct appeal, the TCCA found that the "testimony elicited from Mr. Bolding at trial was the same as the testimony he gave at the preliminary hearing but different from his original statements to police. The main distinction is that, at trial, Mr. Bolding actually stated that he and Mr. Hammock planned to 'rob' Appellant." *Hendricks I*, 2014 WL 1330184, at *7. However, the TCCA rejected the claim because "[t]he jury learned of the discrepancies in Mr. Bolding's claims through cross-examination," and because "no rational jury would have found that evidence of a planned robbery or evidence that a pressure washer was pawned by Mr. Hammock would establish adequate provocation for Appellant to shoot and kill Mr. Hammock or shoot and injure Mr. Bolding." *Id.*

First, there is no *Brady* violation "where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information.'" *United States v. Clark*, 928 F.3d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2nd Cir. 1988)). A prosecutor is not, therefore, obligated to produce material that is in the public domain and readily available to a petitioner. *See United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004) ("[T]he State bears no responsibility to direct the defense toward potentially exculpatory evidence that is either known to the defendant or that could be discovered through the exercise of reasonable diligence."); *Mills v. Singletary*, 63 F.3d 999, 1015-16 (11th Cir. 1995) (finding no

violation of duty to disclose in failure to reveal contents of officer's deposition where defense counsel attended deposition). Bolding testified at trial and at the preliminary hearing that he and Mr. Hammock were going to take the drugs if Petitioner did not return Hammock's flat-screen television [*See, e.g.*, Doc. 11-2 at 45-48, 68-69, 109-15]. Petitioner's counsel was present at the preliminary hearing [*See id.*; *see also* Doc. 11-26 at 12]. Accordingly, Petitioner was aware of this testimony, and it was not suppressed. Furthermore, the fact that Hammock did not use the term "rob" in testifying does not render the evidence exculpatory.

Additionally, Petitioner cannot establish that the evidence of the victim's intent, or the source of the funds to purchase the drugs, was favorable or material to his defense, because no rational jury would have found that such evidence established adequate provocation for Petitioner to kill Hammock and injure Bolding. This is particularly true in light of Bolding and Petitioner's testimony that the victims were driving away when Petitioner fired the fatal and injurious shots [*See* Doc. 11-2 at 73-74; Doc. 11-4 at 111-12]. Further, the evidence was not material, as Petitioner was able to cross-examine Bolding extensively and accused him on numerous occasions of lying [Doc. 11-2 at 81-128]. *See also Byrd v. Collins*, 209 F.3d 486, 518 (6th Cir. 2000) ("[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material.") (citation omitted).

Therefore, the Court finds that Petitioner has failed to demonstrate that the State court's denial of his *Brady* claim was contrary to, or involved an unreasonable application of, clearly established law, or that this claim was based on an unreasonable determination of facts in light of the evidence presented.

## B.    Jury Instructions

Petitioner next claims that the trial court violated his constitutional right to due process when it "failed to charge [the] jury on [the] defense of justification for use of deadly force" in light of evidence suggesting "that the shooting of both victims was accidental or unplanned" [Doc. 21 at 6, 7].

While Petitioner claimed during post-conviction proceedings that trial counsel was ineffective in failing to request jury instructions on the statutory defenses of duress and necessity, he never presented a claim to the TCCA that the trial court erred by failing to issue such jury instructions [*See* Doc. 11-19 at 6; Doc. 11-33 at 10-12].  By failing to present this distinct claim to the TCCA, he failed to exhaust it.  *See, e.g., O'Sullivan*, 526 U.S. at 845; *Adams*, 330 F.3d at 402-03.  Because there is no avenue by which Petitioner may now obtain State-court review of this claim, it is technically exhausted but procedurally defaulted by Tennessee's applicable rules.  *See Jones*, 696 F.3d at 483; *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period); § 40-30-102(c) ("one petition" rule); § 40-30-106(g) (claim-waiver rule); and § 40-30-117 (requirements for reopening postconviction actions).

The Court finds that the fundamental miscarriage of justice exception is inapplicable on the facts of this case.  Petitioner argues that he can establish cause for his default under the holding of *Martinez v. Ryan*, where the United States Supreme Court held that, in some circumstances, the ineffective assistance of post-conviction counsel may provide cause to excuse the default of a substantial ineffective assistance of trial counsel claim.  *See Martinez v. Ryan*, 566 U.S. 1, 9, 14 (2012).  However, Petitioner did not default an ineffective assistance of counsel claim; he defaulted a claim of trial court error.  Accordingly, the *Martinez* exception is inapplicable, and Petitioner has otherwise failed to demonstrate cause for his default or any showing of resulting prejudice.  Accordingly, this claim will be dismissed.

### C.    *Blakely* Claim

In his third claim, Petitioner asserts that the trial court enhanced his sentenced based on facts not admitted by him nor found by a jury, in violation of *Blakely v. Washington*, 542 U.S. 296 (2004) [Doc. 21 at 10-11].  However, Petitioner did not exhaust this claim by presenting it to the TCCA for review.  *See, e.g., O'Sullivan*, 526 U.S. at 845; *Adams*, 330 F.3d at 402-03.  Because there is no avenue by which Petitioner may now obtain State-court review of this claim, it is technically exhausted but procedurally defaulted by Tennessee's applicable rules.  *See Jones*, 696 F.3d at 483; *see also* Tenn. Code Ann. § 40-30-102(a), -102(c), -106(g), and -117.

The Court finds that the fundamental miscarriage of justice exception is inapplicable on the facts of this case, and the *Martinez* "cause" exception is inapplicable to his defaulted allegation of trial court error.  *See Martinez*, 566 U.S. at 9, 16.  Accordingly, Petitioner has failed to establish that an exception applies to vitiate the bar, and this claim will be dismissed.

### D.    Trial Court Error

In his fourth claim for relief, Petitioner alleges that the trial court erred when it "refused his request for a substitution of counsel" [Doc. 21 at 14].  However, Petitioner presents no argument in support of this claim and fails to identify when his request was made and for what reason.  Therefore, his conclusory allegations fail to warrant relief.  *See Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003) ("Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.").

Regardless, Petitioner did not exhaust this claim by presenting it to the TCCA for review. *See, e.g., O'Sullivan*, 526 U.S. at 845; *Adams*, 330 F.3d at 402-03.  Because there is no avenue by which Petitioner may now obtain State-court review of this claim, it is technically exhausted but procedurally defaulted.  *See Jones*, 696 F.3d at 483; *see also* Tenn. Code Ann. § 40-30-102(a), -102(c), -106(g), and -117.  As with his other defaulted claims, Petitioner has not alleged any

cognizable cause for his default, nor does he make any showing of resulting prejudice. Additionally, he has not demonstrated that failure to review this claim would result in a miscarriage of justice. Accordingly, this claim will be dismissed.

### E.  Ineffective Assistance of Counsel

In his fifth claim of error, Petitioner raises nine distinct claims of ineffective assistance of counsel [Doc. 21 at 16-17]. Specifically, he argues that trial counsel was deficient for failing to: (a) investigate, prepare, and speak to witnesses; (b) prepare for trial by investigating legitimate defenses; (c) file a motion seeking the victim's arrest history as well as the arrest histories for each of the State's witnesses, and a motion for expert funds; (d) call Chris Page as a witness; (e) call character witnesses; (f) request proper jury instructions; (g) visit the crime scene; (h) adequately consult with Petitioner; and (i) adequately strategize with Petitioner [*Id.*].

#### 1.  Exhausted Claim

Petitioner has only properly exhausted one of his ineffective assistance of counsel claims – Claim 5(f). In Claim 5(f), Petitioner alleges that trial counsel was ineffective for failing to request all appropriate jury instructions [Doc. 21 at 16].

Petitioner challenged the effectiveness of his trial counsel during his State post-conviction proceedings [Doc. 11-25 at 10, 35-36]. Following an evidentiary hearing, the post-conviction court rejected the claim that Petitioner's counsel was ineffective for failing to request certain jury instructions [*Id.* at 41-42]. The TCCA affirmed on appeal. *Hendricks II*, 2017 WL 3174074, at *5-8.

To the extent Petitioner's federal habeas allegations have additional or expanded factual or legal bases beyond those asserted in State court, such claims were not fairly presented to the State courts and are thus barred by procedural default. *See Baldwin*, 541 U.S. at 29; *Duncan*, 513 U.S. at 365-66.

However, to the extent Petitioner's current claim challenges the State court's adjudication of his post-conviction claim, the claim is exhausted. Review of this claim is governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas corpus relief: (1) he must demonstrate constitutionally deficient performance by counsel, and (2) he must demonstrate actual prejudice as a result of such ineffective assistance. *Strickland*, 466 U.S. 668 (1984). Deficiency is established when a petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687-88. A reviewing court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight." *Id*. at 689. In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Id*.

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Id.* at 694. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment. *Id.* at 691.

On habeas review, the issue for the district court is not whether the *Strickland* standard is met, but rather, whether the State-court's decision that *Strickland* was not met warrants relief under AEDPA standards. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a State court, a petitioner "must

demonstrate that it was necessarily unreasonable" for the State court to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

Applying *Strickland*, the State post-conviction court found that Petitioner's "claims of duress and necessity were not appropriate" under the facts established at trial, and that Petitioner's counsel was not deficient where counsel "made an informed strategic decision to proceed to trial on a claim of self-defense" [Doc. 11-25 at 41-42]. On appeal, the TCCA affirmed, finding, *inter alia*, "[t]he defense of duress would clearly have been inapplicable to the Petitioner's charge of first degree murder because, as explained [], the urgency of harm to the Petitioner could not have outweighed the harm to the deceased victim." *Hendricks II*, 2017 WL 3174074, at *6. It further found that "the statutory defense of necessity arguably has no application in the case of homicide, and therefore, trial counsel was not deficient in failing to request a jury instruction for necessity." *Id*. at *8.

After reviewing the record, this Court finds that the facts developed at trial would not have reasonably led Petitioner's counsel to seek a jury instruction on either the defense of necessity or duress. Under Tennessee law, necessity is a defense to criminal liability when "[t]he person reasonably believes the conduct is immediately necessary to avoid imminent harm," and "[t]he desirability and urgency of avoiding the harm clearly outweigh the harm sought to be prevented by the law proscribing the conduct, according to ordinary standards of reasonableness." Tenn. Code Ann. § 39-11-609.

First, Petitioner shot two fleeing, unarmed victims. Second, he created the harmful situation by selling illegal drugs. Third, as the TCCA noted, "based on the information provided by the Petitioner and based on the investigation conducted by trial counsel and his investigator, counsel decided on a trial strategy claiming the Petitioner acted in self-defense." *Hendricks II*, 2017 WL 3174074, at *8. Finally, under Tennessee law, the defense of necessity does not apply

to crimes of violence. *See State v. Poole*, No. M2010-01179-CCA-R3CD, 2012 WL 826605, at *6 (Tenn. Crim. App. Mar. 9, 2012). Accordingly, Petitioner presented no facts which would have warranted a jury instruction regarding necessity.

> Under State law, a petitioner may avail himself of the defense of duress where:
>
> [T]he person or a third person is threatened with harm that is present, imminent, impending and of such a nature to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. The threatened harm must be continuous throughout the time the act is being committed, and must be one from which the person cannot withdraw in safety. Further, the desirability and urgency of avoiding the harm must clearly outweigh the harm sought to be prevented by the law proscribing the conduct, according to ordinary standards of reasonableness.

Tenn. Code Ann. § 39-11-504(a). Duress is not a defense to conduct when the defendant "intentionally, knowingly, or recklessly" places himself in a situation where it is probable that he would be subjected to compulsion. Tenn. Code Ann. § 39-11-504(b). This "rare defense" applies when a defendant commits an offense due to another's threat of death or serious injury if the defendant does not commit the offense. Tenn. Code Ann. § 39-11-504, Sent'g Comm'n Cmts. "The compulsion must be immediate and imminently present and of such a nature to produce a well-founded fear of death or serious bodily harm." *State v. Green*, 915 S.W.2d 827, 832 (Tenn. Crim. App. 1995) (citing *State v. Robinson*, 622 S.W. 2d 62, 73 (Tenn. Crim. App. 1980)).

Here, the evidence shows that when the victims in this case attempted to drive off with the drugs, Petitioner shot them [*See* Doc. 11-2 at 73-74; Doc. 11-4 at 111-12]. *See also Hendricks I*, 2014 WL 1330184, at *4. Instead of withdrawing himself, Petitioner filed several more shots at the victims after their car stopped [*See* Doc. 11-5 at 34-35]. Petitioner never saw either of the victims with a weapon, and the victims made no threats of harm to Petitioner [Doc. 11-4 at 109-11]. Moreover, Petitioner "recklessly bec[a]me involved in a situation in which it was probable that the [petitioner] would be subjected to compulsion" by agreeing to sell drugs to the victims.

Tenn. Code Ann. § 39-11-504(b). Given these facts, nothing in the record supports Petitioner's claims that his counsel should have asked for a jury instruction on duress.

Furthermore, Petitioner cannot show that the outcome of his trial would have been different had counsel requested these instructions, because no reasonable juror would have concluded that Petitioner acted out of necessity or duress given the above-stated facts.

Petitioner additionally argues that his trial counsel was ineffective for failing to have the trial court instruct on the lesser-included offenses of reckless homicide and criminally-negligent homicide [Doc. 21 at 16]. This specific argument was never advanced to the TCCA, and therefore, this portion of Petitioner's argument is procedurally defaulted. *See, e.g., Baldwin*, 541 U.S. at 29; *Duncan*, 513 U.S. at 365; *see also O'Sullivan*, 526 U.S. at 845; *Adams*, 330 F.3d at 402-03. Nevertheless, the argument is meritless, because the jury ultimately found Petitioner guilty of the greater offense of first-degree murder despite being instructed on lesser-included offenses, thereby demonstrating its disinclination to convict on any lesser-included charge [*See* Doc. 11-17 at 70-83]. *See State v. Williams*, 977 S.W.2d 101, 106 (Tenn. 1998) ("[B]y finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, second degree murder, the jury necessarily rejected all other lesser offenses," rendering court's erroneous failure to charge voluntary manslaughter harmless). Accordingly, Petitioner cannot show that his post-conviction counsel was ineffective on this issue.

Therefore, the Court finds that Petitioner has failed to establish that the decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, *Strickland* and its progeny, or that the decision was based on an unreasonable determination of facts in light of the evidence presented.

## 2.    Procedurally Defaulted Claims

Petitioner raised numerous ineffective assistance of counsel claims to the post-conviction trial court [Doc. 11-25 at 5-13, 34-37].   However, Petitioner abandoned all but one of his Sixth Amendment claims prior to his post-conviction hearing [*Id*. at 34-37].   Therefore, Petitioner's claims asserted in Claim 5(a)-(e), (g)-(i) were never properly exhausted to the TCCA.   *See O'Sullivan*, 526 U.S. at 845; *Adams*, 330 F.3d at 402-03.   Because there is no avenue by which Petitioner may now obtain State-court review of these claims, they are technically exhausted but procedurally defaulted by Tennessee's applicable statute of limitations, waiver rules, and prohibition against successive petitions.   *See Coleman*, 501 U.S. at 732; *Jones*, 696 F.3d at 483; *see also* Tenn. Code Ann. § 40-30-102(a); -102(c); -106(g); and -117.

Petitioner has not argued that that a fundamental miscarriage of justice would result from failure to review the claims, and the Court otherwise finds the exception inapplicable.   Therefore, the Court considers whether Petitioner has established the requisite cause and prejudice for the default.   As the Court has already noted, in some circumstances, the ineffective assistance of post-conviction counsel may provide cause to excuse the default of a substantial ineffective-assistance of trial counsel claim.   *See Martinez v. Ryan*, 566 U.S. 1, 9, 14 (2012); *Sutton v. Carpenter*, 745 F.3d 787, 792-95 (6th Cir. 2014) (applying *Martinez* exception to post-conviction proceedings in Tennessee).

In order to constitute "cause" to overcome a procedural default under *Martinez*, a petitioner must show that:  (1) he has a substantial claim that trial counsel rendered ineffective assistance, (2) counsel on initial State collateral review was nonexistent or ineffective, (3) the State collateral review proceeding was the initial review proceeding as to the ineffective assistance of trial counsel claim alleged; and (4) the State requires that the ineffective assistance of trial counsel claim be

raised for the first time during the State collateral proceeding. *Trevino v. Thaler*, 569 U.S. 412, 423 (2013) (discussing requirements under *Martinez*).

Therefore, in stating a viable ineffective assistance of trial counsel claim under *Martinez*, a petitioner must show the ineffectiveness of post-conviction counsel and "the substantial nature of his underlying [ineffective assistance of trial counsel] claims." *Woolbright v. Crews*, 791 F.3d 628, 637 (6th Cir. 2015) (citation omitted). A substantial claim is one that "has some merit." *Martinez*, 566 U.S. at 14. Inversely, a claim is insubstantial if it "does not have any merit or ... is wholly without factual support." *Id*. at 15-16.

### a.      Investigate, prepare, and speak to witnesses

Petitioner fails to provide any substantive arguments or facts in support of his claim that trial counsel rendered ineffective assistance in failing to investigate, prepare, and speak to witnesses [Doc. 21 at 16]. Therefore, his conclusory allegation is insufficient to meet the substantiality requirement of *Martinez*. *See Martinez*, 566 U.S. at 16 (noting procedural default need not be excused when the underlying claim is without merit or any factual support).

Additionally, Petitioner cannot demonstrate an entitlement to relief under the AEDPA based on the failure to present witnesses where, as is the case here, those witnesses were not tendered at the post-conviction hearing [Doc. 11-26]. *See, e.g., Stewart v. Wolfenbarger*, 468 F.3d 338, 353 (6th Cir. 2006). Accordingly, this claim is insubstantial and barred from review.

### b.      Investigate legitimate defenses

Petitioner next asserts that trial counsel was ineffective for failing to investigate legitimate defenses [Doc. 21 at 16]. Petitioner has not presented any substantive argument or facts in support of this claim, and it consists of a mere conclusory allegation that renders it insubstantial. *See Martinez*, 566 U.S. at 16.

This claim is otherwise meritless for the reasons set forth in the Court's discussion of Claim 5(f) at E.1, *supra*. Accordingly, Petitioner's claim is not substantial under *Martinez*, and it is barred from review.

### c. Arrest histories and funds for forensic expert

Petitioner claims that trial counsel was ineffective for failing to file a motion for the arrest histories of the victim and each of the State's witnesses, as well as for funds to retain a forensic expert [Doc. 21 at 16]. Petitioner has not presented any substantive argument or facts in support of this claim, and it is insubstantial under *Martinez*. *See Martinez*, 566 U.S. at 16.

Additionally, the Court notes that the facts developed at trial showed that Petitioner agreed to sell the victims drugs, and when the victims attempted to drive away from the deal, Petitioner shot the victims and lied to the police upon questioning. *See Hendricks I*, 2014 WL 1330184, at *2-3. Under these facts, Petitioner cannot show that a lack of expert funding, or the arrest histories of unspecified witnesses, prejudiced his defense. Therefore, he cannot make a substantial showing of ineffective assistance of post-conviction counsel in failing to raise this claim. Accordingly, this claim is not substantial under *Martinez*, and it is barred from review.

### d. Chris Page

Petitioner also claims that trial counsel was ineffective for failing to call his cousin, Chris Page, as a witness who would have testified that he "bought the television and the victims offered to sell [him] a .25 caliber pistol" [Doc. 21 at 16]. However, Petitioner did not present Chris Page as a witness during his post-conviction evidentiary hearing [Doc. 11-26]. Therefore, Page's testimony and its relevance to Petitioner's case is wholly speculative and insufficient to warrant relief. *See, e.g., Wolfenbarger*, 468 F.3d at 353.

Furthermore, Petitioner has previously conceded that this issue lacks merit. Specifically, he acknowledged that he was not charged in this case with any crime involving a television, and

that the identity of the perpetrator was not an issue [Doc. 11-25 at 37]. Therefore, the question of whether a television was traded to Petitioner or Page is not material [*Id.*]. Given these circumstances, Petitioner fails to show that this claim is substantial under *Martinez*, and it is barred from review.

### e. Character witnesses

Petitioner next asserts that his counsel was ineffective for failing to call three character witnesses in support of his defense at trial [Doc. 21 at 16]. Specifically, he complains that counsel failed to call his grandmother, his mother, and his aunt [*Id.*]. However, Petitioner's argument is conclusory, as it fails to explain what testimony would have been offered by these witnesses, or how the proposed testimony would have been relevant. Moreover, Petitioner never presented these witnesses at his State post-conviction evidentiary proceedings. Therefore, the testimony of these witnesses and their relevance to Petitioner's case is wholly speculative and insufficient to warrant relief. *See, e.g., Wolfenbarger*, 468 F.3d at 353.

Finally, Petitioner has previously conceded that this issue has no merit considering he acknowledged being involved in "serious criminal activity" and, therefore, "a decision of trial counsel to not make the Petitioner's character an issue during the guilt phase of the trial (and thus opening up cross examination to questions of prior criminal behavior) would not rise to deficient performance of counsel" [Doc. 11-25 at 37-38]. Accordingly, this claim is not substantial under *Martinez*, and it is barred from review.

### f. Crime scene

Petitioner next claims that trial counsel was ineffective for failing to visit the crime scene, have it photographed, and "provide a defensive narrative and explore all possible defenses concerning the car" [Doc. 21 at 16]. However, Petitioner's claim lacks any developed argument, and its conclusory nature is renders it insubstantial. *See Martinez*, 566 U.S. at 16. Moreover, it is

clear from the facts presented by the defense at trial that the defense theory was that Petitioner shot

at the victims only after he believed they were trying to shoot him. The jury rejected Petitioner's

version of events and found him guilty of premeditated first-degree murder and attempted first-

degree murder. *See Hendrick I*, 2014 WL 1330184, at \*1. Petitioner fails to show how the car's

position or photographs of the crime scene would support his assertion that counsel was ineffective

at trial. Therefore, the Court finds this claim is not substantial under *Martinez*, and it is barred

from review.

### g. Consultation prior to trial

Petitioner claims that trial counsel was ineffective for providing "infrequent[]

consult[ation]" prior to trial [Doc. 21 at 16]. However, he presents no argument in support of his

claim other than referencing the Court to his "[d]iscovery request jail-visitation-log" [*Id.*].

Petitioner's claim lacks any developed argument or factual support, and its conclusory

nature is insufficient to render it substantial under *Martinez*. *See Martinez*, 566 U.S. at 16.

Moreover, during State post-conviction proceedings, Petitioner's trial counsel testified that he

hired an investigator to assist with the preparation of Petitioner's case, and that he and the

investigator met with the Petitioner on various occasions before trial [Doc. 11-26 at 12].

Furthermore, as the State court noted in its rejection of Petitioner's post-conviction appeal, trial

counsel was very experienced and devoted "one hundred percent of his practice" to criminal

defense [*Id.* at 19]. *See also Hendricks II*, 2017 WL 3174074, at \*3.

Therefore, Petitioner has failed to establish deficiency by counsel or resulting prejudice,

and his claim is not substantial under *Martinez*. Accordingly, it is barred from review.

### h. Abandonment and strategy

Finally, Petitioner claims that trial counsel was ineffective for "abandon[ing] him resulting

in his failure to present [a] credible and plausible defense strategy" [Doc. 21 at 16]. In support of

this claim, Petitioner states that the critical issue at trial was not whether he shot the victims, but rather, that Petitioner "did not purposely intend to harm anyone" because he "was in a state of duress produced by adequate provocation" when he pulled out a pistol and shot at the victim's car [*Id*. at 16-17].

First, the Court finds that this claim generally mirrors the claim made as part of Claim 5(f) at E.1, *supra*, which the Court has rejected. Next, to the extent Petitioner's claim argues that he was effectively abandoned by counsel because counsel would not argue duress, the Court notes Petitioner must demonstrate that he was "left without any functioning attorney of record" to succeed on such a claim. *See Maples v. Thomas*, 565 U.S. 266, 288 (2012). Here, trial counsel always functioned as Petitioner's attorney throughout trial, and Petitioner has not demonstrated, nor does the record indicate, otherwise. Therefore, Petitioner cannot show that this claim is substantial under *Martinez*, and it is barred from review.

## IV.     CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

**V.     CONCLUSION**

Petitioner has failed to demonstrate an entitlement to federal habeas relief.  Therefore, his petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**.  A certificate of appealability from this decision will be **DENIED**.  Further, the Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous.  Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE